SCHWARTZ, Judge.
While standing at the clothes line in the yard of her apartment house, Mrs. Coto was struck in the eye by a piece of wire thrown up by a power lawn mower being operated by her son, Rolando, Jr. Rolando was mowing the lawn at the apartment building, which was owned, along with the mower itself, by the present appellee, Anipecu, Inc. The mower had been entrusted by the corporation to its apartment co-managers, Mr. and Mrs. Alfaro, who were primarily responsible for the maintenance of the premises, including the lawn. Mr. Alfaro, however, had suffered a heart attack, and was thus physically unable to use the mower. His wife apparently could not operate the equipment, so the grass went uncut for several weeks. On the day in question, after Mrs. Alfaro had tried to do so herself, Rolando, Jr. either volunteered[1] or was asked by Mrs. Alfaro, to do the job. The accident occurred as he was doing so in the presence of both Alfaros and under the specific direction of Mr. Alfaro. Mrs. Coto and her husband sued Anipecu, Inc. for her injuries on the theory that Coto, Jr. was an implied sub-servant of the defendant-landlord and that it was therefore vicariously liable for his negligence under the respon-deat superior doctrine. The trial judge entered summary judgment for the defendant and the plaintiffs appeal. We reverse.
The summary judgment was entered below, and is defended here, on the ground that the president of Anipecu, Ani-ceto Perez, had told the Alfaros that only they, and no one else, could use the lawn mower. We hold however that the movant-defendant did not, as required to sustain a summary judgment, conclusively demonstrate the non-existence of a genuine issue as to the material fact of whether Perez had specifically forbidden the Alfaros to permit another person to use the mower under any circumstances. Wills v. Sears, Roebuck & Co., 351 So.2d 29 (Fla.1977); Holl v. Talcott, 191 So.2d 40 (Fla.1966). If the jury concludes that there was in fact no such express command to the contrary, the defendant may be held, under these circumstances, to have impliedly authorized the “employment” of Coto, Jr. and thus to bear responsibility for his negligence. The rule stated in Jacobi v. Claude Nolan, Inc., 122 So.2d 783, 787 788 (Fla. 1st DCA 1960) is directly applicable:
“While we are inclined to agree with the defendant that the proofs did not establish the existence of an express contractual relationship of master and servant between these parties, this is not the only way that the relationship may be created. The relationship may arise by implication by the employment of a sub-servant by a servant to perform duties for the master, where the master has entrusted the servant with a task which cannot be performed by him within a reasonable time, where the business is of such a nature as to require the assistance of others, where there is an emergency, or where the authority to employ and use a subservant may be implied from the nature of the business or the course of trade. In these circumstances, the servant may employ a subservant to assist in the furtherance of the master’s business, *185 even though authority to hire the subser-vant has not been expressly given by the master. And under these conditions the master may be held liable for the tortious acts of the subservant, if they have been committed in the course of the employment.” [emphasis supplied]
Higgins v. Investors Acceptance Co. of Miami, 287 So.2d 724 (Fla. 3d DCA 1974), upon which the appellee relies, is not controlling. In that case, distinguishing Jacobi, we held that a collection agency could not be deemed to have impliedly authorized a bill collector to hire a body guard. The court stated, at 287 So.2d 726:
“The general rule which holds an employer liable under the doctrine of respon-deat superior for torts committed within the real or apparent scope of the employer’s business does not apply in a situation such as exists in this case when an employee hires a helper which his employer neither directed in fact, nor could be considered from the nature of the employment to have authorized or expected the employee to hire.”
In this case, in contrast, the defendant surely could have expected, from the very “nature of the employment” that someone other than the managers — such as a neighborhood boy — would be called upon to mow the lawn. Cf. Peace River Phosphate Mining Co. v. Thomas A. Green, Inc., 102 Fla. 370, 135 So. 828 (1931). Moreover, the Higgins ease involved none of the other factors referred to in Jacobi, any or all of which the trier of fact may find to have existed in this situation, that is,
“[whether] the master ha[d] entrusted the servant with a task which cannot be performed by him within a reasonable time, [whether] the business [was] of such a nature as to require the assistance of others, [and whether] there [was] an emergency . . . ”
See also Goldie v. Dillon, 140 So.2d 81 (Fla. 2d DCA 1962). For these reasons, the summary judgment is reversed and the cause remanded for trial.
Reversed and remanded.

. See Goldie v. Dillon, 140 So.2d 81 (Fla. 2d DCA 1962).